RECORD NO. 15-2580

# IN THE
# United States Court of Appeals
## FOR THE FOURTH CIRCUIT

SUSAN VIRGINIA PARKER, LANE LAIRD FUNKHOUSER; K.F.,
by her parent and next friend Susan Parker; JUSTIS FUNKHOUSER,
a/k/a J.F., by his parent and next friend Susan Parker,

*Plaintiffs-Appellants,*

v.

MICHAEL AUSTIN, BRITTANY UTTERBACK, JENNIFER
WIMER, AMANDA JUDD, in their personal capacities &
HENRY & WILLIAM EVANS HOME FOR CHILDREN, INC.,
LAURA REGAN, MIKE POWERS, WINONA POWERS,
BRENT RUDOLPH, MISSY RUDOLPH, in their personal capacities,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
AT HARRISONBURG

## RESPONSE BRIEF OF APPELLEES

James M. Bowling, IV
VSB No. 47756
St. John, Bowling, Lawrence
& Quagliana, LLP
416 Park Street
Charlottesville, Virginia 22902
(434) 296-7138
jmb@stblawva.com

*Counsel for Appellees*
*Utterback, Wimer & Judd*

Julia B. Judkins
VSB No. 22597
Bancroft, McGavin,
Horvath & Judkins, P.C.
Suite 400
9990 Fairfax Boulevard
Fairfax, Virginia 22030
(703) 385-1000
jjudkins@bmhjlaw.com

*Counsel for Appellee*
*Austin*

Kevin V. Logan
VSB No. 19153
Kenneth F. Hardt
VSB No.23966
Sinnot, Nuckols & Logan, PC
13811 Village Mill Drive
Midlothian, Virginia 23114
(804) 892-3861
klogan@snllaw.com

*Counsel for Appellees*
*Evans Home, Regan, Powers*
*and Rudolphs*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __15-2580__        Caption: _Susan Virginia Parker, et. al. v. Michael Austin, et. al._____

Pursuant to FRAP 26.1 and Local Rule 26.1,

_Michael Austin_____
(name of party/amicus)

_____

who is _____appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?   ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                ☐ YES ☑ NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
      other publicly held entity?                                    ☐ YES ☑ NO
      If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature: _____        Date: _____January 13, 2016_____

Counsel for: _Michael Austin, Appellee_____

## CERTIFICATE OF SERVICE
**************************

I certify that on _____1/13/16_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Daniel A. Harvill, Esquire
VSB No. 47756
DANIEL A. HARVILL, PLLC
9403 Grant Avenue, Suite 202
Manassas, VA 20110
(571) 287-6795 (facsimile)
danielaharvillpllc@gmail.com
Counsel for Plaintiff

James M. Bowling, IV, Esquire
VSB No. 14232
St. John, Bowling, Lawrence & Quagliana, LLP
416 Park Street
Charlottesville, VA 22902
jmb@stlawva.com
Counsel for Brittany Utterback, Jennifer Wimer, Amanda Judd

_____
(signature)

_____1-12.2016_____
(date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __15-2580__    Caption: __Susan Virginia Parker, et al., v. Michael Austin, et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Brittany Utterback-Silvestri__
(name of party/amicus)


who is _____appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO


2.    Does party/amicus have any parent corporations?    ☐ YES ☑ NO
       If yes, identify all parent corporations, including all generations of parent corporations:




3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO
       If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature: _____    Date: _5/11/16_____

Counsel for: Appellees Silvestri, Wimer, and Judd

## CERTIFICATE OF SERVICE
*****************************

I certify that on ___May 11, 2016___ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Kenneth F. Hardt, Esq.
Sinnott, Nuckols & Logan, P.C.
13811 Village Mill Drive
Midlothian, VA 23114
804-893-3861
804-423-5424 (fax)
khardt@snllaw.com

Julia B. Judkins, Esq.
Bancroft, McGavin, Horvath & Judkins, P.C.
3920 University Drive
Fairfax, VA 22030
703-385-1000
703-385-1555 (fax)
jjudkins@bmhjlaw.com
*See attached for additional counsel

_____
(signature)

_____5/11/16_____
(date)

- 2 -

## ATTACHMENTS TO DISCLOSURE OF CORPORATE AFFILIATIONS
## AND OTHER INTERESTS

Certificate of Service (Continued)

Daniel A. Harvill
Daniel A. Harvill, PLLC
9403 Grant Avenue, Suite 202
Manassas, VA 20136
703-485-3111
danielharvillpllc@gmail.com

James R. Mason, III
Home School Legal Defense Association
P. O. Box 3000
Purcellville, VA 20134
540-338-5600

_____        _____
James M. Bowling, IV                                    Date  5/11/16

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __15-2580__    Caption: __Susan Virginia Parker, et al., v. Michael Austin, et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Jennifer Wimer__
(name of party/amicus)

who is _____appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.  Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO

2.  Does party/amicus have any parent corporations?  ☐YES ☑NO
    If yes, identify all parent corporations, including all generations of parent corporations:

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐YES ☑NO
    If yes, identify all such owners:

4.     Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))? ☐YES ☑NO
If yes, identify entity and nature of interest:

5.     Is party a trade association? (amici curiae do not complete this question) ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.     Does this case arise out of a bankruptcy proceeding? ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: _____  Date: _5/11/16_

Counsel for: Appellees Silvestri, Wimer, and Judd

## CERTIFICATE OF SERVICE
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

I certify that on ___May 11, 2016___ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Kenneth F. Hardt, Esq.
Sinnott, Nuckols & Logan, P.C.
13811 Village Mill Drive
Midlothian, VA 23114
804-893-3861
804-423-5424 (fax)
khardt@snllaw.com

Julia B. Judkins, Esq.
Bancroft, McGavin, Horvath & Judkins, P.C.
3920 University Drive
Fairfax, VA 22030
703-385-1000
703-385-1555 (fax)
jjudkins@bmhjlaw.com
\*See attached for additional counsel

_____
(signature)

_5/11/16_
(date)

- 2 -

## ATTACHMENTS TO DISCLOSURE OF CORPORATE AFFILIATIONS
## AND OTHER INTERESTS

<u>Certificate of Service (Continued)</u>

Daniel A. Harvill
Daniel A. Harvill, PLLC
9403 Grant Avenue, Suite 202
Manassas, VA 20136
703-485-3111
danielharvillpllc@gmail.com

James R. Mason, III
Home School Legal Defense Association
P. O. Box 3000
Purcellville, VA 20134
540-338-5600

_____          _____
James M. Bowling, IV                                      Date  5/11/16

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. 15-2580        Caption: Susan Virginia Parker, et al., v. Michael Austin, et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Amanda Judd
(name of party/amicus)

who is _____ appellee _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                    ☐ YES ☑ NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
      other publicly held entity?                                        ☐ YES ☑ NO
      If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))? ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question) ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding? ☐YES ☑NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature: _____     Date: 5/11/16

Counsel for: Appellees Silvestri, Wimer, and Judd

## CERTIFICATE OF SERVICE
****************************

I certify that on ___May 11, 2016___ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Kenneth F. Hardt, Esq.
Sinnott, Nuckols & Logan, P.C.
13811 Village Mill Drive
Midlothian, VA 23114
804-893-3861
804-423-5424 (fax)
khardt@snllaw.com

Julia B. Judkins, Esq.
Bancroft, McGavin, Horvath & Judkins, P.C.
3920 University Drive
Fairfax, VA 22030
703-385-1000
703-385-1555 (fax)
jjudkins@bmhjlaw.com
*See attached for additional counsel

_____          5/11/12
(signature)                        (date)

## ATTACHMENTS TO DISCLOSURE OF CORPORATE AFFILIATIONS
## AND OTHER INTERESTS

Certificate of Service (Continued)

Daniel A. Harvill
Daniel A. Harvill, PLLC
9403 Grant Avenue, Suite 202
Manassas, VA 20136
703-485-3111
danielharvillpllc@gmail.com

James R. Mason, III
Home School Legal Defense Association
P. O. Box 3000
Purcellville, VA 20134
540-338-5600

_____          _____
James M. Bowling, IV                                                    Date

8/11/16

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. 15-2580      Caption: Susan Virginia Parker, et al. v. Michael Austin, et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Henry & William Evans Home for Children, Inc.
(name of party/amicus)

who is _____ appellee _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO

2.    Does party/amicus have any parent corporations?    ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐YES ☑NO
      If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct
financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected
substantially by the outcome of the proceeding or whose claims the trade association is
pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: _Keith S N_    Date: _1|4|16_

Counsel for: _Henry & Willams Evans Home_
_for Children, Inc._

## CERTIFICATE OF SERVICE
*************************

I certify that on _1|4|16_ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

Daniel Augustine Harvill, Esquire
Daniel A. Harvill, PLLC
9403 Grant Avenue, Suite 202
Manassas, VA 20110
(703) 485-3111
(571) 287-6795 (fax)
danielaharvillpllc@gmail.com

James M. Bowling, IV
VSB # 14232
St. John, Bowling, Lawrence & Quagliana, LLP
416 Park Street
Charlottesville, Virginia 22902
(434) 296-7138
(434) 296-1301 fax
jmb@stlawva.com

*see attached for more counsel

_Keith S N_
_____
(signature)

_1|4|16_
_____
(date)

Attachment to Disclosure of Interest Form Certificate of Service

Julia B. Judkins, Esquire
BANCROFT, MCGAVIN, HORVATH
& JUDKINS, P.C.
3920 University Drive
Fairfax, Virginia 22030
(703) 385-1000 (telephone)
(703) 385-1555 (facsimile)
jjudkins@bmhjlaw.com

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __15-2580__     Caption: __Susan Virginia Parker, et al. v. Michael Austin, et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Laura Regan__
(name of party/amicus)

_____

who is _____appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.     Is party/amicus a publicly held corporation or other publicly held entity?   ☐ YES ☑ NO

2.     Does party/amicus have any parent corporations?                    ☐ YES ☑ NO
       If yes, identify all parent corporations, including all generations of parent corporations:

3.     Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                         ☐ YES ☑ NO
       If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐ YES ☑ NO
   If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question)    ☐ YES ☑ NO
   If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding?    ☐ YES ☑ NO
   If yes, identify any trustee and the members of any creditors' committee:

Signature: _____    Date: _____

Counsel for: _____

## CERTIFICATE OF SERVICE
**************************

I certify that on _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Daniel Augustine Harvill, Esquire
Daniel A. Harvill, PLLC
9403 Grant Avenue, Suite 202
Manassas, VA 20110
(703) 485-3111
(571) 287-6795 (fax)
danielaharvillpllc@gmail.com

James M. Bowling, IV
VSB # 14232
St. John, Bowling, Lawrence & Quagliana, LLP
416 Park Street
Charlottesville, Virginia 22902
(434) 296-7138
(434) 296-1301 fax
jmb@stlawva.com

*see attached for more counsel

_____          _____
(signature)                                                    (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __15-2580__    Caption: __Susan Virginia Parker, et al. v. Michael Austin, et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Mike Powers__
(name of party/amicus)

_____

who is _____appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                ☐ YES ☑ NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                              ☐ YES ☑ NO
      If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))? ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question) ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding? ☐YES ☑NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature: _____    Date: _____

Counsel for: _____

## CERTIFICATE OF SERVICE
**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

I certify that on _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Daniel Augustine Harvill, Esquire
Daniel A. Harvill, PLLC
9403 Grant Avenue, Suite 202
Manassas, VA 20110
(703) 485-3111
(571) 287-6795 (fax)
danielaharvillpllc@gmail.com

James M. Bowling, IV
VSB # 14232
St. John, Bowling, Lawrence & Quagliana, LLP
416 Park Street
Charlottesville, Virginia 22902
(434) 296-7138
(434) 296-1301 fax
jmb@stlawva.com

*see attached for more counsel

_____         _____
(signature)                                          (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. 15-2580        Caption: Susan Virginia Parker, et al. v. Michael Austin, et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Winona Powers
(name of party/amicus)

_____

who is _____ appellee _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                              ☐ YES ☑ NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
      other publicly held entity?                                                  ☐ YES ☑ NO
      If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature: _____     Date: _____

Counsel for: _____

## CERTIFICATE OF SERVICE
**************************

I certify that on _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Daniel Augustine Harvill, Esquire
Daniel A. Harvill, PLLC
9403 Grant Avenue, Suite 202
Manassas, VA 20110
(703) 485-3111
(571) 287-6795 (fax)
danielaharvillpllc@gmail.com

James M. Bowling, IV
VSB # 14232
St. John, Bowling, Lawrence & Quagliana, LLP
416 Park Street
Charlottesville, Virginia 22902
(434) 296-7138
(434) 296-1301 fax
jmb@stlawva.com

*see attached for more counsel

_____          _____
            (signature)                                    (date)

- 2 -

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. 15-2580        Caption: Susan Virginia Parker, et al. v. Michael Austin, et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Brent Rudolph
(name of party/amicus)


who is _____appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO


2.    Does party/amicus have any parent corporations?                             ☐ YES ☑ NO
      If yes, identify all parent corporations, including all generations of parent corporations:




3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                                    ☐ YES ☑ NO
      If yes, identify all such owners:

4.   Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?   ☐YES ☑NO
     If yes, identify entity and nature of interest:

5.   Is party a trade association? (amici curiae do not complete this question)   ☐YES ☑NO
     If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.   Does this case arise out of a bankruptcy proceeding?   ☐YES ☑NO
     If yes, identify any trustee and the members of any creditors' committee:

Signature: _____     Date: _____

Counsel for: _____

## CERTIFICATE OF SERVICE
****************************

I certify that on _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Daniel Augustine Harvill, Esquire
Daniel A. Harvill, PLLC
9403 Grant Avenue, Suite 202
Manassas, VA 20110
(703) 485-3111
(571) 287-6795 (fax)
danielaharvillpllc@gmail.com

James M. Bowling, IV
VSB # 14232
St. John, Bowling, Lawrence & Quagliana, LLP
416 Park Street
Charlottesville, Virginia 22902
(434) 296-7138
(434) 296-1301 fax
jmb@stlawva.com

*see attached for more counsel

_____          _____
    (signature)                       (date)

- 2 -

Attachment to Disclosure of Interest Form Certificate of Service

Julia B. Judkins, Esquire
BANCROFT, MCGAVIN, HORVATH
& JUDKINS, P.C.
3920 University Drive
Fairfax, Virginia 22030
(703) 385-1000 (telephone)
(703) 385-1555 (facsimile)
jjudkins@bmhjlaw.com

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __15-2580__      Caption: __Susan Virginia Parker, et al. v. Michael Austin, et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Missy Rudolph__
(name of party/amicus)

_____

who is _____appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.  Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO

2.  Does party/amicus have any parent corporations?  ☐YES ☑NO
    If yes, identify all parent corporations, including all generations of parent corporations:

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐YES ☑NO
    If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐ YES ☑ NO
   If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question)  ☐ YES ☑ NO
   If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding?  ☐ YES ☑ NO
   If yes, identify any trustee and the members of any creditors' committee:

Signature: _____    Date: _____

Counsel for: _____

## CERTIFICATE OF SERVICE
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

I certify that on _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Daniel Augustine Harvill, Esquire
Daniel A. Harvill, PLLC
9403 Grant Avenue, Suite 202
Manassas, VA 20110
(703) 485-3111
(571) 287-6795 (fax)
danielaharvillpllc@gmail.com

James M. Bowling, IV
VSB # 14232
St. John, Bowling, Lawrence & Quagliana, LLP
416 Park Street
Charlottesville, Virginia 22902
(434) 296-7138
(434) 296-1301 fax
jmb@stlawva.com

\*see attached for more counsel

_____          _____
            (signature)                                    (date)

- 2 -

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................... iii

I.   STATEMENT OF THE ISSUES  ................................................. 1

II.  STATEMENT OF THE CASE  ................................................... 2

     Statement of Facts ..................................................... 4

III. SUMMARY OF THE ARGUMENT ........................................... 9

IV.  STANDARD OF REVIEW  ..................................................... 12

V.   ARGUMENT  ......................................................................... 14

     A.   The Shenandoah DSS Defendants are entitled to absolute
          immunity for filing the removal petitions, and are not liable
          for the continued detention of the children after the
          emergency and preliminary removal hearings.  ................................. 14

     B.   The allegations in the Complaint do not state a
          claim under the Fourth or Fourteenth Amendments,
          and qualified immunity bars the claims. ........................................... 16

          1.   The Shenandoah DSS Defendants, in relying on
               information provided by a neighboring DSS
               jurisdiction including a report by an emergency
               room physician, did not violate the Fourth
               or Fourteenth Amendments. .................................................. 16

          2.   The parents may not bring a substantive due process
               claim on the facts alleged in the Complaint, which
               do not approach the level of shocking the conscience.  .......... 17

          3.   Based on the facts in the Complaint, which the
               Shenandoah DSS Defendants reasonably believed
               to be true, the removal did not violate
               the Fourth Amendment. ....................................................... 21

4.    The Shenandoah DSS Defendants are
entitled to qualified immunity. ................................................. 26

C.    This Court may consider documents integral to the Complaint. ....... 32

D.    Appellants failed to state claims against Austin for
violation of Fourth Amendment or substantive due
process rights under the Fourteenth Amendment
and Austin is entitled to qualified immunity
and absolute immunity. ..................................................... 37

E.    The Complaint does not allege facts sufficient
to support a state false imprisonment claim, and
therefore Austin and the Shenandoah DSS Defendants
are immune from suit under state law. ............................................ 44

F.    The Complaint does not allege facts sufficient to
support any Constitutional claims nor false imprisonment
claim against the Evans Home Defendants. ...................................... 45

VI.    CONCLUSION .......................................................... 49

VII.    REQUEST FOR ORAL ARGUMENT ........................................ 49

CERTIFICATE OF COMPLIANCE ...................................................... 51

CERTIFICATE OF FILING AND SERVICE ...................................... 62

# TABLE OF AUTHORITIES

## CASES

*Alderman v. United States*,
    394 U.S. 165, 89 S. Ct. 961 (1969) ................................................................17

*Anderson v. Creighton*,
    483 U.S. 635, 107 S. Ct. 3034 (1987) ..........................................................29

*Andreozzi v. Brooke County Comm'n*,
    2007 U.S. Dist. LEXIS 58497 (D.W. Va. 2007) ........................................44, 48

*Ashcroft v. Iqbal*,
    556 U.S. 662, 129 S. Ct. 1937 (2009) ..........................................................12

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544, 127 S. Ct. 1955 (2007) ..........................................................12

*Blankenship v. Manchin*,
    471 F.3d 523 (4th Cir. 2006) ....................................................................13, 32

*Brokaw v. Mercer Cty.*,
    235 F.3d 1000 (7th Cir. 2000) ......................................................................23

*Brown v. Gilmore*,
    278 F.3d 362 (4th Cir. 2002) ........................................................................44

*Cloaninger ex rel. Estate of Cloaninger v. McDevitt*,
    555 F.3d 324 (4th Cir. 2009) ........................................................................24

*Cortec Industrial, Inc. v. Sum Holding L.P.*,
    949 F.2d 42 (2d Cir.1991) *cert. denied*, 503 U.S. 960, 112 S. Ct. 1561
    (1992) ....................................................................................................33, 34

*Cty. of Sacramento v. Lewis*,
    523 U.S. 833, 118 S. Ct. 1708 (1998) ................................................17, 18, 39

*Daniels v. Williams*,
    474 U.S. 327, 106 S. Ct. 662 (1986) .............................................................39

*Doe ex rel. Johnson v. S. Carolina Dep't of Soc. Servs.*,
   597 F.3d 163 (4th Cir.2010) ............................................................28

*Evans v. Chalmers*,
   703 F.3d 636 (4th Cir. 2012) .....................................................15, 41

*Gedrich v. Fairfax County Dep't of Family Servs.*,
   282 F. Supp. 2d 439 (E.D. Va. 2003) ..............................................40

*Goines v. Valley Community Services Board, et al.*,
   __ F.3d ___ (4th Cir. 2016) ...............................................................33

*Hall v. Virginia*,
   385 F.3d 421 (4th Cir. 2004) .....................................................13, 33

*Harlow v. Fitzgerald*,
   457 U.S. 800 (1982)...........................................................................27

*Hodge v. Jones*,
   31 F.3d 157 (4th Cir. 1994) .......................................................18, 42

*Hunsberger v. Wood*,
   570 F.3d 546 (4th Cir. 2009) ........................................23, 25, 26, 27

*Hutto v. S. Carolina Retirement System*,
   773 F.3d 536 (4th Cir. 2014) ............................................................12

*Illinois v. Gates*,
   462 U.S. 213, 103 S. Ct. 2317 (1983) ..............................................23

*Imbler v. Pachtman*,
   424 U.S. 409, 96 S. Ct. 984 (1976) ..................................................14

*Jenkins v. Medford*,
   119 F.3d 1156 (4th Cir. 1997) ..........................................................26

*Jordan v. Jackson*,
   15 F.3d 333 (4th Cir. 1994) ..............................................................20

*Kurzawa v. Mueller*,
732 F.2d 1456 (6th Cir. 1984) ........................................................43

*Lewis v. Kei*, 281 Va.
281 Va.715, 708 S.E.2d 884 (2011) ...............................................44

*Lintz v. Skipski*,
807 F. Supp. 1299 (W.D. Mich. 1992) ............................................46

*Maciariello v. Sumner*,
973 F.2d 295 (4th Cir. 1992) ..........................................................27

*Marr v. Shoefield*,
307 F. Supp. 2d 130 (D. Me. 2002) .................................................47

*Martin v. Saint Mary's Department Social Services*,
346 F.3d 502 (4th Cir. 2003) .............................................29, 39, 43

*McCrum v. Elkhart County Dep't of Public Welfare*,
806 F. Supp. 203 (N.D. Ind. 1992) ..................................................46

*Milburn v. Anne Arundel County Dep't of Soc. Svcs.*,
871 F.2d 474 (4th Cir. 1989), *cert. denied*, 493 U.S. 850 (1989) ..................46

*Miller v. City of Philadelphia*,
174 F.3d 368 (3rd Cir. 1999) ...........................................................40

*Miller v. Prince George's County, Md.*,
475 F.3d 621 (4th Cir. 2007) ...........................................................31

*Mitchell v. Forsyth*,
472 U.S. 511, 105 S. Ct. 2806 ........................................................27

*Murphy v. Goff*,
2010 U.S. Dist. LEXIS 56119 (W.D. Va. 2010) .............................46

*Nelson v. Green*,
965 F. Supp. 2d 732 (W.D. Va. 2013) ......................................29, 42

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
    591 F.3d 250 (4th Cir. 2009) ........................................................13

*O'Connor v. Ortega*,
    480 U.S. 709, 107 S. Ct. 1492 (1987) ...........................................22

*P.G. v. Ramsey County*,
    141 F. Supp. 2d 1220 (D. Minn. 2001).........................................46

*Parrish ex rel. Lee v. Cleveland*,
    372 F.3d 294 (4th Cir. 2004) ..................................................26, 28

*Pearson v. Callahan*,
    555 U.S. 223, 129 S. Ct. 808 (2009) .............................................27

*Pfoltzer v. County of Fairfax*,
    775 F. Supp. 874 (E.D. Va. 1991) *aff'd* 1992 U.S. App. LEXIS 14447
    (4th Cir. 1992)...............................................................................46

*Philips v. Pitt County Memorial Hospital*,
    572 F.3d 176 (4th Cir. 2009) ...........................................13, 32, 33

*Prescott v. Wade*,
    2013 U.S. Dist. LEXIS 47720 (E.D. Va. 2013) ......................39, 42

*Rayburn v. Hogue*,
    241 F.3d 1341 (11th Cir. 2001) ..............................................46, 47

*Reichle v. Howards*,
    ___U.S.___, 132 S. Ct. 2088 (2012) ..............................................28

*Renn v. Garrison*,
    100 F.3d 344 (4th Cir. 1996) ..................................................39, 42

*Saucier v. Katz*,
    533 U.S. 194, 121 S. Ct. 2151 (2001) ...........................................23

*Street v. Surdyka*,
    492 F.2d 368 (4th Cir. 1974) .......................................................44

*Sucampo Pharm., Inc. v. Astellas Pharma, Inc.*,
    471 F.3d 544 (4th Cir. 2006) ...........................................................................12

*Torchinsky v. Siwinski*,
    942 F.2d 257 (4th Cir. 1991) ...................................................................23, 30

*United States v. Ramos-Cruz*,
    667 F.3d 487 (4th Cir.2012) ...........................................................................24

*United States v. Rohrig*,
    98 F.3d 1506 (6th Cir. 1996) ...........................................................................25

*Vosburg v. Dep't of Soc. Servs.*,
    884 F.2d 133 (4th Cir. 1989) .................................................14, 15, 30, 43

*Walker v. Johnson*,
    891 F. Supp. 1040 (M.D. Pa. 1995)..........................................................46, 47

*Weller v. Dep't of Soc. Servs. for City of Baltimore*,
    901 F.2d 387 (4th Cir. 1990) .................................................14, 18, 19, 39

*White v. Chambliss*,
    112 F.3d 731 (4th Cir. 1997) ...........................................................................41

*Wildauer v. Frederick Cty.*,
    993 F.2d 369 (4th Cir. 1993) .................................................15, 22, 29

*Wilson v. Layne*,
    141 F.3d 111 (4th Cir. 1998) ...........................................................................28

*Wolf v. Fauquier Cty.*,
    2007 U.S. Dist. LEXIS 67362 (E.D. Va. 2007), aff'd 555 F.3d 311
    (4th Cir. 2009)...............................................................................................44

*Wolf v. Fauquier Cty. Bd. of Supervisors*,
    555 F.3d 311 (4th Cir. 2009) .................................................18, 19, 39

*Zak v. Chelsea Therapeutics International, Ltd.*,
    780 F.3d 597 (4th Cir. 2015) .................................................13, 32

## STATUTES

42 U.S.C. § 1983 ................................................................2, 14, 44

Va. Code Ann. § 16.1-251 .............................................4, 7, 20, 25, 48
Va. Code Ann. § 16.1-251(B) ...............................................................48
Va. Code Ann. § 16.1-252 .....................................................................48
Va. Code Ann. § 16.1-252(D) ...............................................................21
Va. Code Ann. § 16.1-252(E)(1) ...........................................................21
Va. Code Ann. § 16.1-252(G) ...............................................................21
Va. Code Ann. § 16.1-253(b) .................................................................33
Va. Code Ann. § 63.2-1509(A)(3) .....................................................9, 40
Va. Code Ann. § 63.2-1512 ..............................................................43, 45
Va. Code Ann. § 63.2-1517 ..............................................................20, 48

## RULES

Fed. R. Civ. P. 12(b)(6) ....................................................12, 13, 32,34, 49
Fed. R. Civ. P. 41(a)(2) ...........................................................................3

## CONSTITUTION

Const. amend. IV ...................................... 22, 37, 40, 44, 45, 49
Const. amend. V.....................................................................22
Const. amend. XIV.............................................................37, 39

## I.    STATEMENT OF THE ISSUES

1.    Whether the District Court erred in granting Austin's, Utterback's, Wimer's, and Judd's Motion to Dismiss Count One of the Complaint, finding that Susan Virginia Parker ("Parker"), Lane Laird Funkhouser ("Funkhouser"), and J.F. and K.F.[1], failed to state claims for violation of their Fourth Amendment rights.

2.    Whether the District Court erred in granting Austin's, Utterback's, Wimer's, and Judd's Motion to Dismiss Counts Two and Four of the Complaint, finding that Parker and Funkhouser failed to state claims for violation of their Fourteenth Amendment rights.

3.    Whether the District Court erred in granting Austin's, Utterback's, Judd's, Evans Home's, Regan's, the Powers' and the Rudolphs' Motion to Dismiss Count Three of the Complaint, finding that Parker, Funkhouser, J.F. and K.F. failed to state claims for violation of their Fourth Amendment rights.

4.    Whether the District Court erred in granting Austin's, Utterback's, Wimer's, Judd's, Evans Home's, Regan's, the Powers' and the Rudolphs' Motion to Dismiss Count Five of the Complaint, finding that J.F. and K.F. failed to state claims for false imprisonment.

---

[1]The Funkhouser children are referred to by their initials.

1

5.      Whether Austin, Utterback, Wimer, and Judd are entitled to qualified immunity.

## II.    STATEMENT OF THE CASE

Appellants Parker, Funkhouser, J.F. and K.F. filed suit against appellees Michael Austin ("Austin"), Brittany Utterback Silvestri ("Utterback"), Jennifer Wimer ("Wimer"), Amanda Judd ("Judd"), the Henry & Williams Evans Home for Children, Inc. ("Evans Home"), Laura Regan ("Regan"), Mike Powers and Winona Powers (collectively "the Powers" or "Powers"), and Brent Rudolph and Missy Rudolph (collectively "the Rudolphs" or "Rudolphs"), on July 24, 2014, alleging violations of Fourth and Fourteenth Amendment Constitutional rights under 42 U.S.C. § 1983, and state law claims of wrongful imprisonment and negligence.

Appellants alleged violation of Fourth Amendment Constitutional rights against Utterback, Wimer, Judd and Austin for initial seizure of J.F. and K.F. (JA. p. 19-20). Parker and Funkhouser alleged violation of Fourteenth Amendment Constitutional rights against Utterback, Wimer, Judd and Austin for the initial seizure of J.F. and K.F. (JA. p. 20)[2]. All Appellants alleged violation of Fourth Amendment Constitutional rights against Utterback, Judd, Austin, Evans Home, Regan, the Powers and the Rudolphs for the alleged continued detention of J.F. and K.F. without justification. (JA. pp. 20-21). Parker and Funkhouser alleged

---

[2]Reference to citations in a Joint Appendix shall be "JA."

2

violation of Fourteenth Amendment Constitutional rights against Utterback, Judd, Austin, Evans Home, Regan, the Powers and the Rudolphs, for alleged ongoing holding without justification.  (JA. pp. 21-22).  J.F. and K.F. alleged state law claims of wrongful imprisonment against Utterback, Wimer, Judd, Austin, Evans Home, Regan, the Powers and the Rudolphs.  J.F. alleged negligence against Regan, the Powers, the Rudolphs and Evans Home for injuries he allegedly suffered during the time period he was at Evans Home.  (JA. p. 23).

All of the Appellees filed Motions to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Following oral argument on the Motions to Dismiss heard on April 28, 2015, the District Court entered an Order, accompanied by Memorandum Opinion, granting the Appellees' Motions to Dismiss Counts One, Two, Three, Four and Five of the Complaint, resulting in dismissal with prejudice of Austin, Utterback, Wimer and Judd from the case, and exercised discretion to retain jurisdiction over Count Six of the Complaint, negligence, which proceeded against Evans Home, Regan, the Powers, and the Rudolphs.  (JA. pp. 162-80).

J.F. later moved for voluntary dismissal without prejudice pursuant to Fed. R. Civ. P. 41(a)(2) of Count Six of the Complaint to which no objection was noted, and the remaining Count was dismissed by Order entered November 24, 2015. (JA. pp. 183-84).  Appellants filed their Notice of Appeal to the District Court's

April 28, 2015 Order dismissing with prejudice Counts One through Five - the federal claims. (JA. pp. 185-86).

## Statement of Facts

This matter arose out of the removal of two minor children, J.F. and K.F., from their parents by social workers employed by Shenandoah County Department of Social Services ("Shenandoah DSS") on July 25, 2012, followed by presentation to the Shenandoah County Domestic Relations District Court ("JDR Court" or "JDR") for an emergency removal Order pursuant to Virginia Code § 16.1-251 based on affidavit and *ex parte* petition filed on July 27, 2012 and the Order entered the same date. (JA. pp. 7-8, 14-15, 45-53). Appellants alleged that the information relied upon by Shenandoah DSS came primarily from Austin, whom it was alleged formed the "determination" that Parker was suffering from Munchausen syndrome or Munchausen syndrome by proxy. (JA. pp. 10-14). Austin is a social worker employed by Clarke County, Virginia Department of Social Services. (JA. p. 7). Utterback, Wimer and Judd ("DSS Defendants") were at the time of the incidents relevant to this suit employees of Shenandoah DSS. (JA. pp. 7-8). Evans Home is engaged in the business of providing foster care for children, and Regan, the Powers, and the Rudolphs, at all relevant times hereto, were employees of Evans Home. (JA. pp. 8-9).

4

Between the fall of 2011 and continuing into July 2012, J.F. and K.F. suffered from numerous illnesses and were diagnosed with strep infection, parasitic infection, and C. difficile infection, which Parker and Funkhouser believed were related to an undiscovered septic system located on nearby abandoned property that was infested with rodents. (JA. p. 9). During the time the family lived in Clarke County, Virginia, J.F. and K.F. missed "extended periods of school" between late December 2011 continuing through March 2012. (JA. p. 9). Because of the children's extended absence from school, truancy charges were brought against Parker. (JA. p. 10).

In approximately March 2012, the family moved from Clarke County to Shenandoah County, Virginia. (JA. p. 9). The truancy charges were dismissed by *nolle prosequi* "on or about April 13, 2012" due to Parker's submission of a notice of intent and acknowledgment from Shenandoah County that she would home school J.F. and K.F. (JA. p. 10). Austin was involved "in the matter" as a result of truancy charges brought against Parker while the family was living in Clarke County, Virginia, and attended the initial truancy hearing in March 2012. (JA. p. 10).

Following dismissal of the truancy charges, Parker and/or Funkhouser traveled to Arkansas with the children, returning to Shenandoah in May 2012. (JA. p. 10). Between May and July 2012, J.F. and K.F. continued to see medical

5

providers who "had difficulty curing. . . ." their illnesses. (JA. p. 11). On July 13, 2012, the family took the children to the hospital on advice of a family care doctor. (JA. p. 11). On July 22, 2012, J.F. and K.F. were brought to Rockingham Memorial Hospital ("RMH") for treatment "due to worsening symptoms." (JA. p.11). A hospital employee, Dr. Kent Fulsome ("Dr. Fulsome"), contacted the Clarke County Department of Social Services and spoke to Austin. (JA. p. 11). It is alleged that Austin and/or Dr. Fulsome agreed to hold J.F. and K.F. in the hospital so that Shenandoah DSS could be notified. (JA. pp. 11-12). Austin communicated to Dr. Fulsome his "belief" that Parker was suffering from Munchausen syndrome by proxy. (JA. p. 12). This disorder is a "a mental illness that sometimes results in a disordered behavior where the sufferer falsifies symptoms of themselves, their children, dependent loved ones and/or where the sufferer intentionally causes an illness to themselves or an illness to a loved one. These acts are committed for purposes of gaining sympathy or attention from third parties." (JA. p. 12).

Austin communicated this with the Shenandoah DSS workers between July 22 and 23, 2012. (JA. pp. 12-13). After that communication, on July 25, 2012, Defendants Utterback and/or Judd "prepared an affidavit based on Austin's assertions" that "was based primarily on accusations against [the parents] related to Munchausen Syndrome by Proxy" and was allegedly prepared "without any input

6

from any mental health professional." (JA. p. 14). The affidavit in support of the emergency removal petition was considered by the JDR Court pursuant to Virginia Code § 16.1-251 after J.F. and K.F. were removed from the Parker/Funkhouser home in Shenandoah County by Utterback and Wimer. (JA. pp. 14, 74-48). The affidavit presented to the JDR Court included information from reports made by the Clarke County Department of Social Services, an interview with the RMH regarding its physician's report, a home visit and interviews with the children's aunt and parents, a review of hospital records, and a review of prior CPS involvement with the family, including the fact that the family was a flight risk. (JA. pp. 45-49 and 74-78[3]). The JDR Court granted the emergency removal at a hearing on July 27, 2012, based on both the Shenandoah DSS employees' affidavit and sworn testimony from Utterback, Judd and Austin. (JA. pp. 15, 52-53).

The preliminary removal hearing was held on August 1, 2012, at which Utterback, Judd and Austin appeared and the JDR Court entered an order, based on agreement of the parties - including Appellants, the children's guardian and their counsel - that no adjudication as to abuse or neglect was to be made at that time. The matter was continued to August 29, 2012, with the child protective order

---

[3]Appellees Austin, Utterback, Wimer and Judd all cited to the same JDR Court pleadings in support of their Motions to Dismiss. Copies of those Exhibits produced with the separately filed Motions to Dismiss are included in the Appendix.

7

remaining in place and the children remaining in Shenandoah DSS custody. (JA. pp. 15, 55-63). At the hearing, Appellants were represented by Daniel A. Harvill, Esquire, who is counsel of record for all Appellants in this matter and the children had a separate guardian protecting their interests.

Between July 26, 2012 and August 29, 2012, J.F. and K.F. were in the care of Evans Home under the supervision of Regan, the Powers and the Rudolphs, (collectively known as "Evans Home Defendants" or "the Evans Home Defendants"). (JA. p. 16, 56-63).

On August 29, 2012, a hearing was held in the JDR Court at which the children were returned to the parents, the court made no adjudication as to abuse or neglect, and the court entered an order requiring the parents to "abstain from offensive conduct against the children; to cooperate in the provisions for participation and completion of a parental capacity evaluation with a medical provider; and to refrain from acts of commission or omission which would tend to endanger the children's life, health or normal development." (JA. pp. 18, 64-69). The matter was continued for final disposition to November 7, 2012, at which time the JDR Court dismissed all petitions concerning removal of the children and, it is alleged, determined that there was no evidence of abuse or neglect. (JA. p. 18). Before the court hearing, Shenandoah DSS issued an administrative finding that

8

the accusations of abuse and neglect against Parker and Funkhouser were "unfounded." (JA. p. 18).

## III.  SUMMARY OF THE ARGUMENT

Based on the allegations in the Complaint, Austin reasonably contacted the Shenandoah DSS Defendants after he received a call from the emergency room physician, Dr. Folsom, who expressed concerns about abuse and neglect of J.F. and K.F.  The Shenandoah DSS Defendants reasonably removed the children under the Fourth Amendment pending an emergency removal hearing and none of the social workers' conduct can be described as shocking the conscience under the Fourteenth Amendment.   Contrary to Appellants' argument, once the family moved to Shenandoah, Austin only became involved after he was contacted by Dr. Folsom, who was seeking information about the children.  Austin then contacted Shenandoah DSS. Both Dr. Folsom and Austin are mandatory reporters under the provisions of Virginia Code § 63.2-1509(A)(3).   Austin had no choice but to contact the Shenandoah DSS Defendants.  It was only after Austin was contacted by Dr. Folsom that he conveyed any information to the Shenandoah DSS Defendants.

The Shenandoah DSS Defendants responded to a complaint suggesting the possibility of serious harm and proceeded to investigate and take steps to ensure

the safety of children, who were being held in an emergency room on a physician's concerns, who had been known to be moved around by their parents, who had been "in the system" in neighboring Clarke County, and whose mother was suspected of having a mental illness that compels her to inflict harm on the children to gain sympathy or attention from third parties.

Even if this Court finds there was a constitutional violation, Austin and the Shenandoah DSS Defendants are entitled to qualified immunity because the law in the Fourth Circuit is not clearly established with regard to what constitutes unconstitutional conduct on the part of social workers investigating abuse and neglect cases.

In determining whether the allegations in the Complaint are insufficient to state a claim for constitutional violations, this Court may also consider the court orders referred to and relied on in the Complaint to support the allegations. These court documents, particularly the affidavit that is alleged to have been prepared on the same day as the removal of the children, demonstrate what the Shenandoah DSS Defendants *were told* and what information they obtained, not only from Austin but also from RMH and several employees, that they reasonably believed to be true at the time of the removal. The Shenandoah DSS Defendants were told, among other things, that the family had returned to the hospital again and left

10

against medical advice; the family reported that they had been sleeping in their car; the family returned to RMH and there were no medical reasons for the children's symptoms; a physician who worked at the same hospital that was treating the children for the bacterial infection had suspected Munchausen syndrome by proxy; that several investigations in a neighboring DSS jurisdiction had been thwarted by the parents' moving the children out of state; that this same neighboring jurisdiction had received two different reports of Medical Neglect concerning the children; that the parents reported to RMH they had been traveling throughout the United States, they were all sick, and they could not figure out what was wrong with them.

The District Court properly dismissed the state law claim of false imprisonment for the same reasons supporting dismissal of the Fourth Amendment claims and Austin and the Shenandoah DSS Defendants are entitled to sovereign immunity.

As to the Evans Home Defendants, there is barely mention of them in the Brief of Appellants. It is clear from the Complaint, however, that the Evans Home Defendants are not responsible for any alleged "seizure" of the children and that the children's stay at the home was pursuant to lawful process and orders of a court. It is also clear from the Complaint that the Evans Home is a private facility and is not a "state actor" for purposes of any alleged constitutional violation.

Finally, it is also clear from the Complaint that the Evans Home Defendants watched over the children pursuant to the lawful actions of others and, for the majority of the time, pursuant to an order that was agreed to by counsel for the parents and by the guardian of the children. Accordingly, the false imprisonment claim as to the Evans Home Defendants fails as a matter of law.

## IV.  STANDARD OF REVIEW

This Court reviews a District Court's grant of a motion to dismiss under Rule 12(b)(6) *de novo.  Sucampo Pharm., Inc. v. Astellas Pharma, Inc.,* 471 F.3d 544, 550 (4th Cir. 2006).  The Court of Appeals "may affirm the dismissal by the District Court upon the basis of any ground supported by the record even if it is not the basis relied upon by the District Court." *Hutto v. S. Carolina Ret. Sys.*, 773 F.3d 536, 550 (4th Cir. 2014)(internal quotations and citation omitted).

The court must grant a motion to dismiss if, considering the complaint and its allegations in the light most favorable to the non-moving party, the plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569, 127 S. Ct. 1955, 1974 (2007).  The analysis under Rule 12(b)(6) is a "context-specific task" that requires the court to draw on its "judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950 (2009).  The plausibility standard requires more than "a sheer possibility that a defendant has acted lawfully." *Id.* at 678, 129 S. Ct.

at 1949.  In evaluating a complaint for purposes of a motion under Rule 12(b)(6), the court must "decline to consider unwarranted inferences, unreasonable conclusions, or arguments" contained in the complaint.  *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009)(internal quotations and citation omitted).

In deciding a Rule 12(b)(6) motion, a court may consider an authentic document attached to a motion to dismiss so long as it is integral to and relied on in the Complaint.  *Philips v. Pitt County Memorial Hosp.,* 572 F.3d 176, 180 (4th Cir. 2009); *Blankenship v. Manchin*, 471 F.3d 523, 526, n. 1 (4th Cir. 2006).  A court should not consider documents attached to a motion to dismiss where the documents do not relate to the contents of the complaint.  *Zak v. Chelsea Therapeutics Int'l, Ltd*., 780 F.3d 597, 601, 607 (4th Cir. 2015)(District Court erred in considering SEC filings attached to motion to dismiss where complaint did not refer to SEC filings to support the plaintiff's allegations).  However, a court may properly take judicial notice of matters of public record, *Hall v. Virginia*, 385 F.3d 421, 424 (4th Cir. 2004), such as the JDR Court order and affidavit, which formed the basis of the court's.

13

## V.    ARGUMENT

### A.    The Shenandoah DSS Defendants are entitled to absolute immunity for filing the removal petitions, and are not liable for the continued detention of the children after the emergency and preliminary removal hearings.

The Shenandoah DSS Defendants are immune from suit for all allegations related to the preparation and filing of the removal petitions, and for prosecuting the case to the end.  The Fourth Circuit, like other circuits, has extended the immunity that prosecutors enjoy under §1983 to social workers.  As to the §1983 claims, this absolute immunity from suit applies to the preparing and filing of the initial removal petition/affidavit and for social workers' actions in prosecuting the case.  *Vosburg v. Dep't of Soc. Servs.*, 884 F.2d 133, 138 (4th Cir. 1989).  This absolute immunity bars suits against individuals functioning as judicial advocates even when they are alleged to have engaged in wrongdoing such as making misrepresentations to the court or offering false evidence.  *See Imbler v. Pachtman*, 424 U.S. 409, 425, 96 S. Ct. 984, 992 (1976); *Weller v. Dep't of Soc. Servs. for City of Baltimore*, 901 F.2d 387, n. 11 (4th Cir. 1990).

Under Virginia law, the filing of the removal petition is the start of legal proceedings against the parent, and at that point the duty of a social worker is as an advocate in that process, just like a prosecutor.  *Vosberg*, 884 F.2d at 138.  Just like a prosecutor, a social worker enjoys absolute immunity from suit under §1983 for

these activities because 1) she must use her judgment and discretion in deciding when to file the petition, 2) the welfare of children would be jeopardized if she had to factor her own potential personal liability in making this decision, 3) the denial of absolute immunity would impair the functioning of the child welfare system, and 4) the chances are high that social workers would be sued regularly for filing petitions against parents. *Id.* While absolute immunity does not apply to social workers acting in an investigatory or "policing" capacity, *Id.*, social workers investigating abuse and neglect cases are entitled to qualified immunity. *Wildauer v. Frederick Cty.*, 993 F.2d 369, 373 (4th Cir. 1993).

Finally, once the JDR Court entered its order continuing custody with DSS, the Shenandoah DSS Defendants were relieved from liability for the children's continued detention. *See Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012).

Under the allegations in the Complaint, the Shenandoah DSS Defendants did not act inappropriately or dishonestly. Therefore, the central question in this case is whether qualified immunity shields the Shenandoah DSS Defendants from suit for their investigation and the summary removal of the children on July 25, 2012, pending the JDR Court's entry of a removal order two days later on July 27, 2012.

15

**B.      The allegations in the Complaint do not state a
claim under the Fourth or Fourteenth Amendments,
and qualified immunity bars the claims.**

The facts from the Complaint fail to meet the constitutional standard
required for Fourteenth Amendment substantive due process claims (the "shocks
the conscience" standard), or Fourth Amendment unreasonable seizure claims in
the context of juvenile abuse and neglect investigations.  Even if this Court finds
that the Complaint alleges constitutional violations, the Shenandoah DSS
Defendants are entitled to qualified immunity.

**1.      The Shenandoah DSS Defendants, in relying on
information provided by a neighboring DSS
jurisdiction including a report by an emergency
room physician, did not violate the Fourth
or Fourteenth Amendments.**

The crux of the Complaint is that the Shenandoah DSS investigation violated
constitutional standards because the children's removal was based on Defendant
Austin's erroneous belief that the mother was suffering from Munchausen
syndrome by proxy, and that Shenandoah DSS should have known not to rely on
their colleague's investigation of the case and the reported concern of an
emergency room physician once an illness was confirmed in the children.  The
parents bring a claim based on these facts under both the Fourth and the Fourteenth
Amendments.  (Counts 1-4; JA 24-26).  The parents were not seized and can only

16

assert a Fourteenth Amendment claim.  *See Alderman v. United States*, 394 U.S. 165, 174, 89 S. Ct. 961, 966-67 (1969)(Fourth Amendment rights are personal rights which may not be vicariously asserted).  The children bring Fourth Amendment claims for their seizure.  (Counts 1, 3; JA 24-25).  Their claims fail under the Fourth Amendment, because their removal was reasonable.  The parents' claims under the Fourteenth Amendment fail because the allegations related to the investigation do not "shock the conscience."

> **2.    The parents may not bring a substantive due process claim on the facts alleged in the Complaint, which do not approach the level of shocking the conscience.**

The parents have alleged substantive due process violations under the Fourteenth Amendment based on Shenandoah DSS's alleged intrusion on their right to family integrity and privacy in removing the children from the home and for their continued placement in foster care.  (Counts 2, 4; JA. 25, 26).

With respect to the parent's claims, the Complaint does not plausibly allege a violation of substantive due process, because the allegations do not approach the level of shocking the conscience.  The Fourteenth Amendment's directive that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law" prohibits "certain government actions regardless of the fairness of the procedures used to implement them."  *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 840, 118 S. Ct. 1708, 1713 (1998)(internal quotations and citation omitted).

17

The right to family integrity and privacy is neither absolute nor unqualified, and may be outweighed by a legitimate governmental interest, including the state's interest in curtailing the abuse and neglect of children. *See Hodge v. Jones*, 31 F.3d 157, 164 (4th Cir. 1994). The right to family integrity does not include the constitutional right to be free from all child abuse investigations, *Id.*, but rather investigations that constitute abuse of official power manifested by arbitrary action that shocks the conscience. *Cty. of Sacramento*, 523 U.S. at 834, 118 S.Ct. at 1710.

The Due Process Clause does not guarantee due care, and liability for negligently inflicted harm is beneath the constitutional threshold. *Id.* at 849, 118 S. Ct. at 1718. Instead, the "substantive component of the Due Process Clause is violated by executive action only when it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." *Id.* at 847,118 S. Ct. at 1717 (internal quotations and citation omitted); *see also Wolf v. Fauquier Cty. Bd. of Supervisors*, 555 F.3d 311, 323 (4th Cir. 2009).

Whether executive action "shocks the conscience" is context-specific and dependent on the circumstances. *Cty. of Sacramento,* 513 U.S. at 850-851, 118 S. Ct. at 1718-1718. The Fourth Circuit has held that substantive due process is satisfied when a social worker effects a summary removal of a child based on "some evidence of child abuse." *Weller v. Dep't of Soc. Servs. for City of*

18

*Baltimore*, 901 F.2d 387, 391-92 (4th Cir. 1990)(applying shocks-the-conscience test). In *Wolf,* the court held there was no substantive due process violation where social workers were alleged (among other things) to have made false allegations, failed to investigate fully, and created a fraudulent affidavit. 555 F.3d at 322. A life coach had made a report to DSS that her client, the mother, may harm the children. *Id.* at 315. DSS subsequently responded to the complaint, and proceeded to investigate and take steps to protect the children. *Id.* at 323. Ultimately, the report turned out to be a false positive. *Id.* The Court concluded that the conduct of the social workers did not approach the level of shocking the conscience, and denied relief under the Fourteenth Amendment. *Id.*

Here, the Shenandoah DSS Defendants were contacted and told that children were being held in an emergency room in their jurisdiction, because an emergency room physician contacted Clarke County DSS. (Compl. ¶¶ 38-39; JA. p. 16). Defendant Austin, a social worker from Clarke County DSS, then told the Shenandoah DSS Defendants that the mother was suffering from a mental disorder that may cause her to harm her children – either by intentionally causing illness, or by seeking medical intervention that is unwarranted (and therefore harmful) – in order to gain attention from third parties. (Compl. ¶¶ 41, 44; JA. p. 17). Defendant Austin also conveyed to DSS his version of events regarding the family, and Defendants Utterback and/or Judd prepared an affidavit based on what

19

Defendant Austin has told them. (Compl. ¶¶49-51, 53; JA. p.19). The Shenandoah DSS Defendants then acted on what they were told about the family's history with DSS, the moving around from place to place, the call from the emergency room physician, and Clarke County DSS's concern about the health of the children. (Compl. ¶¶ 21, 23, 28, 31, 38, 41; JA. p. 14-17). They removed the children temporarily from the parents' custody on July 25, 2012 pending a court hearing on the removal, which occurred two days later on July 27, 2012.[3] (Compl. ¶¶57, 61; JA. p. 19-20). The JDR Court entered the emergency removal order based on an *ex parte* petition on July 27, 2012, and continued custody with DSS after the preliminary removal order hearing on August 1, 2012. (Compl. ¶¶61, 64; JA. p. 20). Under Virginia law, a JDR Court may only enter an emergency removal order if presented with evidence that establishes that, absent removal from the parent's custody, a child would be subjected to an imminent threat to life or health to the extent that severe or irremediable injury is likely. Va. Code Ann. § 16.1-251. That order may be continued if DSS proves the same at the preliminary removal hearing (which occurred here on August 1, 2012), where all parties are present and have

---

[3] An emergency removal order must be entered within 72 hours per Virginia law. Va. Code Ann. § 63.2-1517, 16.1-251; *see also Jordan by Jordan v. Jackson*, 15 F.3d 333, 345 n. 14 (4th Cir. 1994)(finding that 72 hours between removal and judicial review is constitutional). The emergency removal hearing in this case occurred two days after the removal.

the right to examine witnesses and put forth evidence on their own behalf.  Va. Code Ann. § 16.1-252(D) and (E)(1).[4]

Like in *Wolf,* the Shenandoah DSS Defendants responded to a complaint suggesting the possibility of serious harm and proceeded to investigate and take steps to ensure the safety of children, who were being held in an emergency room on a physician's concerns, who had been known to be moved around by their parents, who had been "in the system" in neighboring Clarke County, and whose mother was suspected of having a mental illness which compelled her to inflict harm on the children to gain sympathy or attention from third parties.  These are not facts that demonstrate arbitrary actions on the part of the Shenandoah DSS Defendants that amount to conduct that shocks the conscience.  These social workers – charged with investigating allegations of neglect and abuse – did their job, and they did it properly.  The District Court's dismissal of Counts Two and Four should be upheld.

      **3.**      **Based on the facts in the Complaint, which that the Shenandoah DSS Defendants reasonably believed to be true, the removal did not violate the Fourth Amendment.**

The conduct of the Shenandoah DSS Defendants was valid under all tests potentially applicable to the removal under the Fourth Amendment.  Their decision

---

[4] A finding of abuse and neglect may be made at this hearing, or continued to the adjudicatory hearing scheduled thirty days later.  Va. Code Ann. § 16.1-252(G).

to remove was reasonable, it was supported by probable cause, and it was justified by exigent circumstances.

The Fourth Amendment protects against unreasonable searches and seizures. *Wildauer v. Frederick Cty.*, 993 F.2d 369, 372 (4th Cir. 1993). In determining whether a seizure is reasonable, a court must balance the government's need to effect a seizure with the invasion endured by the plaintiff. *Wildauer*, 993 F.2d at 372. In applying the reasonableness analysis to a social worker's investigatory actions, the Fourth Circuit also suggested that investigative home visits by social workers are not subject to the same scrutiny as searches in the criminal context. *Id.; see also O'Connor v. Ortega,* 480 U.S. 709, 722-23, 107 S. Ct. 1492, 1500 (1987)("Thus, where a careful balancing of governmental and private interests suggests that the public interest is best served by a Fourth Amendment standard of reasonableness that stops short of probable cause, we have not hesitated to adopt such a standard.")(internal quotations and citations omitted). Beyond application of the reasonableness standard in *Wildauer*, the standard for judging social workers' removal of children from parental custody in the Fourth Circuit is not established.

Other circuits have held that a social worker's removal of a child is reasonable under the Fourth Amendment if 1) it is pursuant to a court order, 2) it is

supported by probable cause, or 3) it is justified by exigent circumstances.  *See,*

*e.g. Brokaw v. Mercer Cty.*, 235 F.3d 1000, 1010 (7th Cir. 2000)(collecting cases).

Probable cause is not a rigid analysis.  As the Supreme Court stated:

Perhaps the central teaching of our decisions bearing on the probable cause standard is that it is a practical, nontechnical conception. … In dealing with probable cause, ... as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.

*Illinois v. Gates*, 462 U.S. 213, 231, 103 S. Ct. 2317, 2328 (1983)(internal

quotations and citations omitted).

The actions of the Shenandoah DSS Defendants are evaluated based on what

they knew at the time of their decision, and they were not required to consult a

mental health practitioner, pour over medical records, or conduct medical research

into C. *difficile.* (Compl. ¶¶ 55, 56; JA. p.19).  *See Saucier v. Katz*, 533 U.S. 194,

207, 121 S. Ct. 2151 (2001)(explaining that most issues under the Fourth

Amendment "are evaluated for objective reasonableness based upon the

information the officers had when the conduct occurred"); *See Hunsberger v.*

*Wood*, 570 F.3d 546, 555 (4th Cir. 2009)(an official's actions are subject to

scrutiny based on what was known at the time, and not based on what is discovered

in hindsight); *Torchinsky v. Siwinski*, 942 F.2d 257, 264 (4th Cir. 1991)("It will, of

course, always be possible to contend in court that an arresting officer might have

23

gathered more evidence, but judges cannot pursue all the steps a police officer *might* have taken that *might* have shaken his belief in the existence of probable cause…[P]robable cause does not require an officer to be certain that subsequent prosecution of the arrestee will be successful.")(emphasis in original)(internal quotations and citation omitted).  The Shenandoah DSS Defendants are entitled to rely on information provided by a neighboring DSS jurisdiction in removing children from the home, and this reliance does not render the children's removal unreasonable or negate probable cause.  There are no allegations in the Complaint that the Shenandoah DSS Defendants had reason to distrust what Defendant Austin - a fellow social worker with historical involvement with the family - told them. *See, e.g., Cloaninger ex rel. Estate of Cloaninger v. McDevitt,* 555 F.3d 324, 334 (4th Cir. 2009)(officer could rely on *reasonably trustworthy information* to form belief that person posed a danger to others)(emphasis added)*; United States v. Ramos–Cruz,* 667 F.3d 487, 502 (4th Cir.2012)("[o]bservations of fellow officers ... engaged in a common investigation are plainly a reliable basis for a warrant")(citation omitted).

Exigent circumstances also existed.[5]  Appellants alleged in the Complaint that on the same day as the removal (July 25, 2012), the Shenandoah DSS Defendants prepared an affidavit, which was then presented to the JDR Court in an *ex parte* petition on July 27, 2012.  (Compl. ¶¶ 53, 61; JA. p.19-20).  In order for a JDR Court to enter an emergency removal order, it has to be presented with evidence that establishes that, absent removal from the parent's custody, a child would be subjected to an imminent threat to life or health to the extent that severe or irremediable injury is likely.  Va. Code Ann. § 16.1-251.  The JDR Court in this case agreed with the Shenandoah DSS Defendants that there was an imminent risk of severe harm, and not only entered the emergency removal order, but continued custody with DSS after a full evidentiary hearing five days later.

What was known to the Shenandoah DSS Defendants at the time, based solely on the allegations in the Complaint, was that (1) the family had historical involvement with DSS involving health concerns of the children (Compl. ¶¶49-51; JA. p.18); (2) a concern was communicated about the health and safety of the

---

[5] In addition to the exigent circumstances exception to the warrant requirement, police have been afforded an additional exception for functioning as "community caretakers," although this exception has not been applied in the Fourth Circuit to shield an official from liability for the summary removal of children on suspicion of abuse and neglect.  *See, e.g. United States v. Rohrig*, 98 F.3d 1506, 1523 (6th Cir. 1996); *Hunsberger*, 570 F.3d at 554 ("What community caretaking involves and what boundaries upon it exist have simply not been explained to an extent that would allow us to uphold this warrantless entry based on that justification.").

children by a neighboring DSS jurisdiction (Compl. ¶¶49-51, JA. p.18); (3) the parents moved the children around (Compl. ¶¶49-51, 53; JA. pp.18-19); (4) an emergency room physician who was treating the children called DSS (Compl. ¶39; JA. p.16); and (5) the same day of the removal, Shenandoah DSS observed something that motivated them to take the children to the emergency room (Compl., ¶58, JA. p.19). "When policemen, firemen or other public officers are confronted with evidence which would lead a prudent and reasonable official to see a need to act to protect life or property, they are authorized to act on that information, even if ultimately found erroneous." *Hunsberger*, 570 F.3d at 556 (internal quotations and citations omitted).

Shenandoah DSS' removal of the children in this case was reasonable under *Wildauer*, and was also supported by probable cause and exigent circumstances. The District Court's dismissal of the Fourth Amendment claims should be upheld.

### 4. The Shenandoah DSS Defendants are entitled to qualified immunity.

Qualified immunity can be the basis for a motion to dismiss. *Jenkins v. Medford*, 119 F.3d 1156, 1159 (4th Cir. 1997), (JA. p.75). Indeed, "[b]ecause qualified immunity is an immunity from suit, and not merely an immunity from liability, it is effectively lost if a case is erroneously permitted to go to trial." *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 301 (4th Cir. 2004), quoting

*Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 2815. (1985)(internal quotations omitted).

Qualified immunity protects government officials performing discretionary functions from civil liability when their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992)("Immunity protects [officials] from bad guesses in gray areas and ensures that they are liable only for transgressing bright lines."). The analysis of a defendant's claim to immunity involves two questions: whether a constitutional right was violated and/or whether that right was clearly established. If the answer to either question is no, the defendant is entitled to immunity.[6] *See Hunsberger*, 570 F.3d at 552.

Even if this Court finds that a constitutional right was violated, or if the Court elects not to analyze the question under *Pearson v. Callahan*, the Shenandoah DSS Defendants are entitled to qualified immunity because the rights are not clearly established. "To be clearly established, a right must be sufficiently clear that every reasonable [official] would [have understood] that what he is doing

---

[6] "The judges of the District Courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan,* 555 U.S. 223, 236, 129 S. Ct. 808 (2009).

violates that right." *Reichle v. Howards*, \_\_\_U.S.\_\_\_, 132 S. Ct. 2088, 2093

(2012)(internal quotations and citation omitted). The right must be clearly

established in the specific context of the case, and if it was not clear to a reasonable

official that the alleged conduct was unlawful in the situation with which she was

confronted, then she is immune from suit. *Parrish*, 372 F.3d at 301. "In other

words, existing precedent must have placed the statutory or constitutional question

beyond debate." *Reichle*, \_\_U.S. at \_\_\_, 132 S. Ct. at 2093.

The Fourth Circuit has defined what kind of precedent places a defendant on

notice that their conduct is unlawful. A law is "clearly established" when "the law

has been authoritatively decided by the Supreme Court, the appropriate United

States Court of Appeals, or the highest court of the state." *Wilson v. Layne*, 141

F.3d 111, 114 (4th Cir. 1998) (en banc) (internal quotations and citation omitted);

*see also Doe ex rel. Johnson v. S. Carolina Dep't of Soc. Servs.,* 597 F.3d 163, 176

(4th Cir. 2010). What this means is that an official must be able to reasonably

anticipate when their conduct may give rise to liability for damages based on

precedent in the Fourth Circuit or Supreme Court that is relevant to the official's

specific conduct:

> …[O]ur cases establish that the right the official is alleged to have violated
> must have been "clearly established" in a more particularized, and hence
> more relevant, sense: The contours of the right must be sufficiently clear that
> a reasonable official would understand that what he is doing violates that
> right. This is not to say that an official action is protected by qualified
> immunity unless the very action in question has previously been held

unlawful...but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039 (1987).

Within the Fourth Circuit there is a lack of guidance on which to judge social worker investigations and summary removals under the Fourth and Fourteenth Amendments. *See, e.g. Nelson v. Green,* 965 F. Supp. 2d 732, 750 (W.D. Va. 2013)(granting qualified immunity where court could find no case in the Fourth Circuit where a parent has successfully brought a §1983 claim based on his or her family privacy rights); *Wildauer*, 993 F.2d at 372 (4th Cir. 1993)(investigative home visits by social workers are not subject to the same scrutiny as searches in the criminal context); *Martin v. Saint Mary's Dep't Soc. Servs.*, 346 F.3d 502, 506 (4th Cir. 2003)(the right to familial integrity is amorphous in many cases, and the contours of the right to familial integrity may not be sufficiently clear in certain situations, to be deemed "clearly established" as required).

Here, there are no cases that put the Shenandoah DSS Defendants – social workers effecting a removal of children based on information provided by a neighboring DSS jurisdiction that was corroborated by an emergency room physician's call to DSS – on notice that their conduct violated the law. Based on the allegations in the Complaint, what was known to the Shenandoah DSS

Defendants at the time of the removal was that (1) the family had historical involvement with DSS involving health concerns of the children. (Compl. ¶¶49-51; JA. p.18); (2) a concern was communicated about the health and safety of the children by a neighboring DSS jurisdiction (Compl. ¶¶49-51, JA. p.18); (3) the parents moved the children around (Compl. ¶¶49-51, 53; JA. pp.18-19); (4) an emergency room physician who was treating the children called DSS (Compl. ¶39; JA. p.16); and (5) the same day of the removal, Shenandoah DSS observed something that motivated them to take the children to the emergency room (Compl. ¶58, JA. p.19).

There are no allegations in the Complaint that the Shenandoah DSS Defendants acted outside the scope of their authority in removing the children. Further, two court orders were entered – the second after a full evidentiary hearing – sustaining the children's custody with DSS. The social workers filed an *ex parte* petition and the JDR Court entered a removal order on the basis of the petition. (Compl. ¶ 61; JA. p. 20). Appellants argue that the social workers are entitled to only qualified immunity under *Torchinsky*, 942 F.2d at 262, for filing their petition on July 27, 2012. (JA. p. 68). However, as discussed above, social workers petitioning a court for emergency removal are entitled to absolute immunity. *Vosburg*, 884 F.2d at 138.

In any event, even if the standard were only qualified immunity for preparing and filing the removal petition, the Appellants have not sufficiently alleged that the Shenandoah DSS Defendants deliberately, or with reckless disregard for the truth, made materially false statements. *Miller v. Prince George's County, Md.,* 475 F.3d 621, 627 (4th Cir. 2007). The Appellants offer no well pleaded allegations in the Complaint that rise the level of reckless disregard for the truth or deliberate misconduct. Appellants concede that Munchausen syndrome by proxy is a "complicated" disorder, but allege that somehow the Shenandoah DSS Defendants should have instantly and obviously known that a confirmed bacterial infection in the children could singlehandedly preclude the presence of mental illness in the mother, and therefore, that the children were subject to no risk of harm whatsoever. (Compl. ¶¶ 54, 56; JA. p.19). This latter contention is made despite the family's history with DSS, despite the parents' history of moving the children around, and despite the phone call made by the emergency room physician to DSS - from the same hospital that was treating the family for the bacterial infection. (Compl. ¶¶ 36-38; JA. p.16).

The Appellants here allege that the Shenandoah DSS Defendants removed the children when they should have known not to rely on the information provided by Defendant Austin, should have discounted the report from the emergency room physician, and should have known the children were not at the mercy of a parent

with Munchausen syndrome by proxy, even though the Complaint itself states that the syndrome is a "complicated disorder." (Compl. ¶44; JA. p.17). In other words, essentially the Appellants allege that in hindsight, the social workers made a mistake – that they made a bad guess in a gray area. This is precisely the type of conduct that is shielded from liability by qualified immunity. This Court should find the Shenandoah DSS Defendants immune from the constitutional claims by virtue of qualified immunity.

### C. This Court may consider documents integral to the complaint.

This Court may consider facts in documents integral to the Complaint, to the extent that they show what the Shenandoah DSS Defendants were told prior to their decision to remove the children.

In deciding a Rule 12(b)(6) motion, a court may consider an authentic document attached to a motion to dismiss so long as it is integral to and relied on in the complaint. *Philips v. Pitt County Memorial Hosp.,* 572 F.3d 176, 180 (4th Cir. 2009); *Blankenship v. Manchin*, 471 F.3d 523, 526, n. 1 (4th Cir. 2006). A court should not consider documents attached to a motion to dismiss where the documents do not relate to the contents of the complaint. *Zak v. Chelsea Therapeutics Int'l, Ltd*., 780 F.3d 597, 601, 607 (4th Cir. 2015)(District Court erred in considering SEC filings attached to a motion to dismiss where complaint did not refer to SEC filings to support the plaintiff's allegations). While appellees may

32

argue that the affidavit and other court documents were improperly considered by the trial court based on *Goines v. Valley Community Services Board, et al.*, __ F.3d ___, (4th Cir. 2016), that case is inapplicable for several reasons. First, the sworn affidavit in this case, required by Va. Code § 16.1-253(b) before a preliminary protective order can be issued, was part of the JDR Court's record, (JA. pp. 45-49, 50, 52), which gave rise to this lawsuit, and this court may properly take judicial notice of matters of public record. *Hall v. Virginia*, 385 F.3d 421, 424 (4th Cir. 2004). Furthermore, appellees rely on the affidavit only to demonstrate what was told to them, and not to show the veracity of the original statements; for example, whether the parents actually had Munchausen syndrome by proxy is irrelevant, and all that matters is that the doctor contacted Austin, who then contacted the DSS Defendants, which is conceded by the appellants in the original Complaint (¶ 38-61, JA. pp. 11-15).

The policy behind the rule stated in *Philips* is notice to the plaintiff. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir.1991)("[T]he problem that arises when a court reviews statements extraneous to a complaint generally is the lack of notice to the plaintiff... Where plaintiff has actual notice ... and has relied upon these documents in framing the complaint the necessity of

translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated."),

*cert. denied*, 503 U.S. 960, 112 S. Ct. 1561 (1992).

Here, counsel for Appellants also represented the parents in the JDR and District Court proceedings, and counsel does not contest the authenticity of the court orders and affidavit.  (JA. pp. 137, lines 2-4; disputing contested facts in affidavit, but not raising an objection to authenticity).  The Appellants refer to the court orders in this case throughout the Complaint, and specifically assert, "the affidavit for the removal petition was based primarily on accusations against Susan and Lane related to Munchausen Syndrome by Proxy."  (Compl. ¶61; JA. p. 20). The court orders are relied upon and referred to in the Complaint to support the allegations, yet they were not attached to the Complaint.  The policy concern about notice to plaintiff is simply not implicated here - the Complaint is based on these court proceedings.  Therefore, this Court may take into account what the Shenandoah DSS Defendants were told, as memorialized in the affidavit, in making their decision to remove the children.  (Affidavit, JA. pp. 79-83; Complaint, JA. p. 19 (affidavit alleged to have been prepared on same day as removal)).

The affidavit reflects that on July 22, 2012, the hospital contacted Michael Austin with Clarke County DSS and reported that the family came to the hospital

again but left against medical advice; Austin told the hospital that the family was also receiving medications from INOVA Loudoun Hospital and a pharmacy in Arkansas; the family returned later in the day to the hospital and reported that they had been sleeping in their car.  (JA. p. 80).

The affidavit reflects that on July 23, 2012 at 8:49 PM, the hospital called Shenandoah DSS and reported:

· that there were no medical reasons for their symptoms on July 13, 2012;

· that on July 22, 2012, the parents brought the children again and the mother insisted the children be admitted for IV antibiotics, and became angry when the doctor wanted to do a medical evaluation;

· that the mother said they had been traveling all over the U.S. and they could not figure out what was wrong with them;

· that Dr. Kent Folsom suspects Munchausen syndrome by proxy.  (JA. p. 80).

· "On July 25, 2012, the Department received records from Rockingham Memorial Hospital providing written documentation to support the verbal allegations of Munchausen Syndrome by proxy provided to this Department on 7/23/12."  (JA. p. 81).

Further, the affidavit reflects that Clarke County Department of Social Services ("CCDSS") also informed the Shenandoah DSS Defendants of the following:

On February 16, 2012, CCDSS received an allegation of Medical Neglect including the fact that both children had missed a substantial amount of school and that the mother told the truancy officer that she had taken the children to 50 doctors, and the family was diagnosed with viral illness after septic tank failure.

On March 26, 2012, the CCDSS changed the Family Assessment to an Investigation due to the significant amount of doctors the children had gone to and the lack of follow-up by medical professional recommendations. CCDSS said the investigation could not be completed as the family moved to Arkansas.

On March 30, 2012, CCDSS received another allegation of Medical Neglect, but the investigation was not completed due to the family leaving the state.

On April 2, 2012, CCDSS opened an Ongoing Case with the family, but due to their failure to cooperate and the mother taking the children out of state, the case was closed.

Clarke County CPS worker, Michael Austin, said that the family denied him access to the children during the investigations.

(JA. p. 81).

What this demonstrates is simply what Shenandoah DSS *had been told*: they were informed of the family's interactions with hospital staff and that those staff had alerted DSS; that a physician who worked at the same hospital that was treating the children for the bacterial infection had suspected Munchausen syndrome by proxy; that several investigations had been thwarted by the parents' moving the children out of state; that the children had missed months of school; that CCDSS had received two different reports of Medical Neglect; that the mother was insisting that the children get treatment but the hospital insisted there were no medical reasons for the symptoms complained of; that the family was receiving medications from several different providers; and that the mother stated they had been traveling all over the U.S. and the children had seen fifty doctors. While the

36

allegations in the Complaint alone may be insufficient to support the claims, when supplemented by what Shenandoah DSS was *told,* it is evident that the removal was reasonable and not arbitrary.

This Court should uphold the District Court's dismissal of Counts 1-4 and/or should grant the Shenandoah DSS Defendants qualified immunity.

**D.    Appellants failed to state claims against Austin for violation of Fourth Amendment or substantive due process rights under the Fourteenth Amendment and Austin is entitled to qualified immunity and absolute immunity**.

The District Court correctly held that the alleged facts were insufficient to support a claim for violation of the Fourth Amendment or substantive due process rights under the Fourteenth Amendment against Austin based on the contacts he allegedly had with certain persons identified in the Complaint.  At most, it is alleged that Austin, a social worker employed by Clarke County, became involved in the plaintiffs' lives as a result of truancy charges brought against the parents while the family was living in Clarke County.  (Compl. ¶¶ 23, 25).  The Clarke County Department of Social Services took no action after the family moved from Clarke County.  (Compl. ¶ 30).  Appellants acknowledge that it was not Austin who sought them out after the move to Shenandoah County, but that it was contact by an identified emergency room physician from RMH on July 22, 2012 to Austin

seeking information about the family that resulted in Austin's contact with Shenandoah DSS. (Compl. ¶¶ 37, 38, 39, 40, 41). It was only after he was contacted by a physician, who was seeing the children at an emergency room visit at the time, that Austin conveyed any information based on his prior investigation and involvement with the family before they moved to Shenandoah County.

It was not Austin who actually prepared the paperwork submitted to the court for emergency removal of the children, although it is alleged that he provided the information included in the affidavit which was submitted to the court in support of the removal petition. It was not Austin who physically removed the children from the parents' home in Shenandoah County in July 2012. (Compl. ¶ 57). However, a court Order was later entered confirming that removal and placing both children in the custody of Shenandoah DSS. (Exhs. 5 and 6). Furthermore, the affidavit relied upon by the court in entering the emergency removal Orders discloses other information obtained by the Shenandoah DSS social workers from RMH and hospital employees which was included to support the removal petition. (JA. pp.79-83).

All that can be inferred from the allegations is that Austin was either uninformed or not sufficiently informed of the true nature of the psychological condition he suspected Parker had, as a result of which numerous medical issues

and visits involving the children occurred. Other RMH employees, including Dr. Folsom who suspected that Parker suffered from Munchausen syndrome by proxy, raised concerns about the children. (JA. p. 80). The allegations are insufficient to impose liability on Austin for unreasonable or unlawful seizure of the children J.F. and K.F. in violation of their Fourth Amendment rights or any substantive due process rights of either the children or the parents. *Martin v. St. Mary's Dept. Soc. Servs.*, 346 F.3d 502, 507 (4th Cir. 2003)(because the defendants' conduct leading to removal of the children from the parents' home "was no more than negligent conduct, if that, . . . 'no procedure for compensation is constitutionally required'") citing *Daniels v. Williams*, 474 U.S. 327, 333, 106 S. Ct. 662, 666 (1986); *Renn by and through Renn v. Garrison*, 100 F.3d 344, 349-350 (4th Cir. 1996)("A state has a legitimate interest in protecting children from neglect and abuse and in investigating situations that may give rise to such neglect and abuse" and the facts in the case did not show that defendants acted outside the authority granted to them by the state); *Weller v. Dep't. Social Servs.*, 901 F.2d 387, 391-92 (4th Cir. 1990)(no substantive due process claim where conduct does not shock the conscience); *Wolf*, 555 F.3d at 323("Only abuse of power which 'shocks the conscience' creates a substantive due process violation")(citing *County of Sacramento*, 523 U.S. at 846-47, 188 S. Ct. at 1717); *Prescott v. Wade*, 2013 U.S. Dist. LEXIS 47720 *27-29 (E.D. Va. 2013)("imposing civil liability for standard

social services investigations into child abuse would turn Virginia's child abuse reporting system and social services apparatus 'on its head'"). The "standard of culpability for substantive due process purposes," has to exceed "both negligence and deliberate indifference, and reach a level of gross negligence or arbitrariness that indeed 'shocks the conscience.'" *Gedrich v. Fairfax County Dept. of Family Services*, 282 F. Supp. 2d  439, 461 (E.D. Va. 2003)(citing *Miller v. City of Philadelphia*, 174 F. 3d 368, 375-76 (3rd Cir. 1999).

As a publicly employed social worker, Austin is a mandatory reporter under Virginia Code § 63.2-1509(A)(3), and was required by law to report to Shenandoah DSS any suspected abuse or neglect.  The emergency room physician was also a mandatory reporter under the same statute. *Id.*  It was reasonable for Austin to rely upon the communication from the emergency room physician, whom one cannot assume was without sufficient medical knowledge to know when to report suspected child abuse despite the bare allegation that he was not a "mental health professional."  (Compl. ¶ 46). Neither the children nor the parents have valid constitutional claims against Austin, whether for alleged unlawful seizure under the Fourth Amendment or for interference with the family relationship based on the authorities cited herein above.

The District Court correctly held that Appellants failed to state a claim for

violation of Fourth or Fourteenth Amendment rights based on alleged removal of the children from the home by police on July 25, 2012, temporary placement in foster care, and then placement of the children in Evans Home between July 26, 2012, and August 29, 2012. (Compl. ¶ 66, 67). Regardless of the allegations implying that Austin, in conjunction with Utterback and Judd, had communications with the Evans Home Defendants (Regan, Powers and Rudolphs), placement in that home was made pursuant to the court's transfer of custody to Shenandoah DSS at the August 1, 2012, hearing. (JA. pp. 89-97). Austin did not place the children in the home and nothing as alleged against him during this time period rises to the level of violation of constitutional rights. *White v. Chambliss*, 112 F.3d 731, 737 (4th Cir. 1997). The continued detention of the children was not only pursuant to the JDR Court Order, but also with the documented agreement of the parties, including the parents. (JA. pp. 89-97). Based on the court's Orders of August 1, 2012, and the recited agreement of the parties, as a matter of law, Austin's alleged involvement in the initial removal of the children or any alleged communications with Evans Home or the Evans Home Defendants were not the proximate cause of the alleged continued detention or wrongful holding of the children. *Evans v. Chalmers*, 703 F.3d 636, 647-48 (4th Cir. 2012).

Like the Shenandoah DSS Defendants, Austin is entitled to qualified

immunity under well recognized precedent. *Hodge v. Jones*, 31 F.3d 157, 167-68 (4th Cir. 1994)("To expect Defendants to resolve what reasonable jurists have long debated - namely the precise strictures of the penumbral right of familial privacy, . . . especially in the face of legitimate state interest such as the effective detection and prevention of child abuse - is to impose burdens and expectations well beyond their reasonable capacities"); *Renn*, 100 F.3d at 349-51; *Martin*, 346 F.3d at 505-07; *Nelson v. Green*, 965 F. Supp. 2d 732, 744-49 (W.D. Va. 2013)(social worker entitled to qualified immunity despite allegations of intentional conduct which included providing false information, making misrepresentations and omissions of critical facts, mis-characterizing child's statements, and "coercing a false allegation of abuse" from the daughter against the father).  Qualified immunity is "extended to acts that could not possibly have been done in good faith."  *Id*. at 749 (citations omitted).

In Nelson, the court found that the alleged egregious conduct by the social worker in that case raised a substantive due process claim.  However, the court concluded that "this liberty interest" was not clearly established at the time of the social worker's alleged actions in accordance with Fourth Circuit precedent.  Id. at 750.  In the case at bar, Austin's actions were "within the bounds of the laws governing child protective services in Virginia."  *Prescott*, 2013 U.S. LEXIS at 32.  Based on the allegations, Austin is entitled to immunity under Virginia law.  Va.

42

Code § 63.2-1512. Furthermore, the JDR Court involved in the plaintiffs' proceedings confirmed the removal of the children by entry of multiple Orders and transferred custody to the Shenandoah DSS. (JA. pp. 89-97). In light of the Fourth Circuit's statements related to the "lack of clarity" in the analysis of a family's right to custody of their children, balanced against the state's interest in "protecting its minor citizens," often rendering the contours of those rights "insufficiently clear to be 'clearly established,'" Austin should be entitled to qualified immunity. *Id*. at 33 (citing *Martin*, 346 F.3d at 506).

Austin is entitled to absolute immunity for claims related to his participation in the preparation of the affidavit submitted to the court on July 27, 2014, (Compl. ¶¶ 53, 61), and his court appearance on August 1, 2012, to "defend the decision to remove the children from the home." (Compl. ¶ 63). *Vosburg*, 884 F.2d at 136-38 (social workers entitled to absolute immunity for initiating prosecution and presenting the case involved with removal petition), citing *Kurzawa v. Mueller*, 732 F.2d 1456, 1458 (6th Cir. 1984)(in which the court held that witnesses and other persons who were "integral parts of the judicial process" were entitled to absolute immunity).

As alleged, Austin was involved in the preparation of the affidavit submitted with the removal petition filed on July 27, 2012, and appeared in court to offer evidence in support the petition. These are prosecutorial activities as recognized

by the court in *Vosburg*. Therefore, he should be entitled to absolute immunity for those actions. The court pleadings associated with the August 1, 2012 hearing show that Austin was subpoenaed to appear at that hearing. (JA. p. 88). The court's affirmation of the removal of the children and transfer of custody based on entry of Orders to that effect also support Austin's entitlement to immunity.

> ### E. The Complaint does not allege facts sufficient to support a state false imprisonment claim, and therefore and the Shenandoah DSS Defendants are immune from suit under state law.

The false imprisonment claim is duplicative of the constitutional claims and the District Court's dismissal of this claim should be upheld. "False imprisonment is the restraint of one's liberty in the absence of any sufficient legal excuse." *Lewis v. Kei*, 281 Va. 715, 724, 708 S.E.2d 884, 890 (2011). Federal claims for false imprisonment under 42 U.S.C. § 1983 are analyzed as unreasonable seizures in violation of the Fourth Amendment. *Brown v. Gilmore,* 278 F.3d 362, 369 (4th Cir. 2002). To set forth a stated claim of false imprisonment, it must appear from the allegations that the children were held "without probable cause." *Wolf v. Fauquier County,* 2007 U.S. Dist. LEXIS 67362 *30-31 (E.D. Va. 2007), aff'd 555 F.3d 311 (4th Cir. 2009), citing *Street v. Surdyka,* 492 F.2d 368, 372-73 (4th Cir. 1974) and *Andreozzi v. Brooke County Comm'n,* 2007 U.S. Dist. LEXIS 58497, *12-13 (D.W. Va. 2007)("[c]laims of . . . false imprisonment may be defeated by showing a sufficient legal excuse, probable cause, to restraining the plaintiff's liberty.")

Because the children's removal was reasonable, and supported by probable cause and exigent circumstances, as discussed above, the Complaint does not state a claim for false imprisonment. In addition, Austin and the Shenandoah DSS Defendants are immune from this claim under state law, because there are no allegations that they acted in bad faith or with malicious intent. *See* Va. Code Ann. § 63.2-1512.

### F.    The Complaint does not allege facts sufficient to support any Constitutional claims nor false imprisonment claim against the Evans Home Defendants.

As to the Evans Home Defendants, the Brief of the Appellants barely mentions them and makes one wonder why they were made parties to this appeal. They are identified in the "factual" section on page 8 of the Brief as being the Home at which the children were placed. They are mentioned in the "factual" section on pages 9 and 10 of the Brief with respect to allegations that have absolutely nothing to do with this appeal. They are mentioned in the "proceedings below" section of the Brief relating to motions and causes of action alleged. They are not mentioned at all in the Fourth Amendment argument relating to "seizures" (justifiably so, because they did nothing with respect to the alleged "seizures").

They are finally mentioned briefly on pages 47 and 48 of the Brief with an argument that the Evans Home worked with the other defendants to "turn the children against their parents," and an argument that the "Evans Home defendants

exercised physical custody over Son and Daughter." The Evans Home Defendants are not named again in the Brief.

The Evans Home is a private home for foster children and was entrusted with the care of J.F. and K.F. by the authorities pursuant to what appeared to be, and apparently was, a valid JDR Court Removal Order. There is no allegation that the Evans Home Defendants participated with Social Services to obtain the removal order or to keep it in place. Therefore, they cannot be acting under the color of state law and cannot be liable for any violation of the Fourth or Fourteenth Amendment.

Under similar circumstances, the Fourth Circuit has ruled that foster care providers are not state actors for purposes of a § 1983 claim. *Milburn v. Anne Arundel County Dept of Soc. Svcs*, 871 F.2d 474 (4th Cir. 1989), *cert. denied*, 493 U.S. 850 (1989); see, *Pfoltzer v. County of Fairfax*, 775 F. Supp. 874 (E.D. Va. 1991) *aff'd* 1992 U.S. App. LEXIS 14447 (4th Cir. 1992) (foster care provider not state actor); *Murphy v. Goff*, 2010 U.S. Dist. LEXIS 56119 (W.D. Va. 2010)(same); *see also Rayburn v. Hogue*, 241 F.3d 1341, 1347-48 (11th Cir. 2001)(same); *P.G. v. Ramsey County*, 141 F. Supp. 2d 1220, 1226 (D. Minn. 2001)(same); *Walker v. Johnson*, 891 F. Supp. 1040, 1051 (M.D. Pa. 1995)(same); *Lintz v. Skipski*, 807 F. Supp. 1299, 1307 (W.D. Mich. 1992)(same); *McCrum v. Elkhart County Dep't of Public Welfare*, 806 F. Supp. 203, 208 (N.D. Ind.

1992)(same).

As noted by one court:

> Instead, Plaintiff argues that Defendant is a state actor because foster care in Maine is created by Maine statutes and regulations, foster parents receive payments from the State of Maine, foster parents are governed by rules and regulations promulgated and enforced by the Department of Human Services, and the Department of Human Services removed Logan from Plaintiff Christy Marr's custody and placed her in Defendant's home.

> These sorts of arguments have not been successful in other jurisdictions, and they are not persuasive to this Court. See, e.g., *Walker*, 891 F. Supp. at 1051 ("While it is true that foster parents are required to be licensed and are subject to state controls and receive state monies for the care of the children in their charge, those factors alone do not render them state actors for section 1983 purposes."). Courts generally have agreed that foster parents do not perform a function that is reserved exclusively to the state. See, e.g., *Rayburn*, 241 F.3d at 1347; *Milburn*, 871 F.2d at 479; *Howard*, 270 F. Supp. 2d at 144. Further, this Court agrees with the Howard court that the relationship between a state and foster parents therein is not symbiotic in nature. See *Howard*, 270 F. Supp. 2d at 145 (rejecting "the view that the state insinuates itself into the daily activities of foster parents to the extent that they are transformed into state actors").

*Marr v. Shoefield*, 307 F.Supp.2d 130, 134 (D. Me. 2002)

In the Court below, the Appellants attempted to lump all defendants together in arguing that the "defendants" were responsible for an improper "seizure" of the children. At least on appeal, the Appellants make no claim that the Evans Home Defendants are responsible for the "seizure" of the children. At best, the only mention of the Evans Home Defendants is that the Home housed the children pursuant to lawful actions of the other defendants and pursuant to a valid court order. Appellants do not argue, as they could not, that the Evans Home Defendants

had any responsibility with respect to the court orders under which the Home housed the children. The reference in the Appellants' brief that the Evans Home Defendants allegedly tried to interrogate the children or that the children were told that they had to "love" the Evans Home Defendants have absolutely nothing to do with this appeal or the alleged constitutional violations.

As to the false imprisonment claim as to the Evans Home Defendants, the plaintiffs cannot seriously contend that the children were held without probable cause or sufficient legal excuse. *Andreozzi v. Brooke County Comm'n*, 2007 U.S. Dist. LEXIS 58497, *12-13 (D.W. Va. 2007). The plaintiffs alleged that others acted pursuant to authority granted to them under Va. Code § 63.2-1517 to remove the children; that others acted two days later on July 27th to participate in an ex parte hearing pursuant to that section and Va. Code § 16.1-251; that a subsequent hearing was held within five days on August 1st (as required by Va. Code § 16.1-251(B)) pursuant to Va. Code § 16.1-252; and that the matter was continued until August 29th as allowed by that Code section. The continuance from August 1st to August 29th was consented to by the current counsel for the plaintiffs. In addition, the children had a guardian ad litem protecting their interests at the August 1st hearing and he, too, consented to the continuance to August 29th (and thus, consented to the placement of the children at the Evans Home).

The Evans Home Defendants' custody and care for the children was pursuant

to this detailed "process" set forth in the Code of Virginia. If the plaintiffs wish to complain about the process and what occurred during that process, their complaint is with others and not the Evans Home Defendants. Moreover, as to their confinement from August 1st to August 29th, their complaint may be with their current counsel and their guardian ad litem who agreed to the continuance, rather than the Evans Home Defendants.

The District Court properly found that the Complaint failed to allege a valid cause of action against the Evans Home Defendants. The District Court's dismissal should be upheld.

## VI.    CONCLUSION

Appellees, for the reasons stated above, respectfully request that this Court uphold the District Court's dismissal with prejudice of Counts I-V of the Complaint.

## VII.    REQUEST FOR ORAL ARGUMENT

Appellees request oral argument because the issues presented involve an analysis of what facts can properly be considered by a court in a Rule 12(b)(6) motion, as well as complex analysis of the application of the Fourth and Fourteenth Amendments to social worker seizures of abused and neglected children.


Respectfully submitted,

/s/ James M. Bowling, IV
Virginia State Bar No. 47756
ST. JOHN, BOWLING, LAWRENCE
   & QUAGLIANA, LLP
416 Park Street
Charlottesville, Virginia 22902
(434) 296-7138
(434) 296-1301 fax
jmb@stlawva.com
*Counsel for Appellees Brittany Utterback
Silvestri, Jennifer Wimer, and Amanda Judd*

/s/ Julia B. Judkins
Julia B. Judkins, Esquire
Virginia State Bar No. 22597
BANCROFT, MCGAVIN, HORVATH
& JUDKINS, P.C.
9990 Fairfax Boulevard, Suite 400
Fairfax, Virginia 22030
(703) 385-1000 (telephone)
(703) 385-1555 (facsimile)
jjudkins@bmhjlaw.com
*Counsel for Appellee Michael "Toby"
Austin*

/s/Kenneth F. Hardt
Kevin V. Logan, Esquire
Virginia State Bar No. 19153
Kenneth F. Hardt, Esquire
Virginia State Bar No. 23966
SINNOTT, NUCKOLS & LOGAN, P.C.
13811 Village Mill Drive
Midlothian, Virginia 23114
(804) 893-3861 (Hardt)
(804) 893-3864 (Jones)
(804) 378-2610 (facsimile)
*Counsel forAppellees Henry & William
Evans Home for Children, Inc., Laura
Regan, Mike Powers, Winona Powers, Brent
Rudolph, and Missy Rudolph*

## CERTIFICATE OF COMPLIANCE

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[X]    this brief contains [11834] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[  ]    this brief uses a monospaced typeface4 and contains [state the of] lines of text, excluding parts of the brie exempted by Fed. R. App. P. 32(a)(7)(B)(iii)

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. Civ. P. 32(a)(6) because:

[X]    this brief has been prepared in a proportionally spaced typeface using (Word Perfect) in [*14 pt. Times New Roman*]

[  ]    this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: May 11, 2016                          /s/ James M. Bowling, IV
                                             *Counsel for Appellees Brittany*
                                             *Utterback Silvestri, Jennifer Wimer,*
                                             *and Amanda Judd*


                                             /s/ Julia B. Judkins
                                             *Counsel for Appellee Michael*
                                             *"Toby" Austin*


                                             /s/Kenneth F. Hardt
                                             *Counsel forAppellees Henry &*
                                             *William Evans Home for Children,*
                                             *Inc., Laura Regan, Mike Powers,*
                                             *Winona Powers, Brent Rudolph, and*
                                             *Missy Rudolph*

51

## CERTIFICATE OF FILING AND SERVICE

We hereby certify that on this 11th day of May, 2016, we caused this Brief of Appellees to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered users:

> Daniel A. Harvill, Esquire
> VSB No. 47756
> Daniel A. Harvill, PLLC
> 9403 Grant Avenue, Suite 202
> Manassas, VA 20110
> danielaharvillpllc@gmail.com

We further certify that on this 11th day of May, 2016, we caused the required copies of the Brief of Appellees to be hand-filed with the Clerk of the Court.

/s/ James M. Bowling, IV
*Counsel for Appellees Brittany Utterback Silvestri, Jennifer Wimer, and Amanda Judd*

/s/ Julia B. Judkins
*Counsel for Appellee Michael "Toby" Austin*

/s/Kenneth F. Hardt
*Counsel for Appellees Henry & William Evans Home for Children, Inc., Laura Regan, Mike Powers, Winona Powers, Brent Rudolph, and Missy Rudolph*
